323 So.2d 781 (1975)
STATE of Louisiana
v.
George Ray LYNCH.
No. 56701.
Supreme Court of Louisiana.
December 8, 1975.
Donald Soileau, Mamou, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., James Lynn Davis, Dist. Atty., for plaintiff-appellee.
SANDERS, Chief Justice.
The Sabine Parish Grand Jury indicted George Ray Lynch for the second degree murder of Austin Foster. After the trial court overruled several preliminary motions, including a motion to quash the jury venire, the case was tried. The jury returned a verdict of guilty, and the trial judge sentenced the defendant to life imprisonment, without benefit of parole for a period of twenty years.
The defendant appeals, relying upon four assignments of error. Assignments of Error Nos. 5 and 6 were neither briefed nor argued and are, therefore, considered abandoned. See, e. g., State v. Edwards, 261 La. 1014, 261 So. 2d 649 (1972).

*782 ASSIGNMENT OF ERROR NO. 1
The defendant reserved Assignment of Error No. 1 to the overruling of his motion to quash the jury venire. The motion alleged the grand jury venire and petit jury venire did not "fairly represent" the population of Sabine Parish.
Although these allegations are general in nature, the evidentiary record discloses defendant's main contention is the system used by the Jury Commission for selecting names for the general venire is discriminatory and is not designed to reasonably assure the selection of a fair cross-section of the population.
Two witnesses, The Registrar of Voters and the Clerk of Court, testified on the motion. The parties stipulated that the testimony of the other Jury Commissioners would be substantially the same as the Clerk of Court's testimony.[1]
The testimony shows that the 1970 parish-wide voter registration list was the last list furnished by the Registrar of Voters to the Jury Commission. The Clerk of Court, however, testified that he received later registration lists from several candidates for public office. In selecting the general venire, the Commissioners used the voter registration list, telephone directories, and their personal knowledge. Each Commissioner had the duty of maintaining a thorough knowledge of two wards.
The Clerk of Court testified that there was no discrimination because of race, sex, or other illegal factors in the selection of the general venire.
Article 419 of the Louisiana Code of Criminal Procedure provides:
"A general venire, grand jury venire, or petit jury venire shall not be set aside for any reason unless fraud has been practiced or some great wrong committed that would work irreparable injury to the defendant."
From our examination of the testimony, we are convinced that the Jury Commissioners relied substantially upon their personal knowledge of the parish residents. They were able to do so because the parish has a relatively small population. We are equally convinced that the Commissioners made a legitimate effort to provide a fair cross-section of the parish for the jury list. Certainly, there has been no showing of fraud or great wrong required by the above article to set aside the jury venire.
Assignment of Error No. 1 is without merit.

ASSIGNMENT OF ERROR NO. 2
In Assignment of Error No. 2, defendant complains of the denial of his motion to suppress a confession. He confessed to law enforcement officers a few hours after the homicide occurred.
At the hearing on the motion, defendant testified that he is a 26-year-old former pulpwood hauler with only a fifth grade education; that he could not read; that the officers asked him if he knew his rights, and he responded "What rights?"; that one officer then threw a piece of paper upon a counter and said "sign it"; that defendant was afraid, and thus he signed the piece of paper without knowing what it was; that no one advised him of his Miranda rights.
State Trooper Isgitt testified that he arrested defendant in the town of Florien and transported him to the Sheriff's office in Many. He did not inform defendant of his rights at the time of the arrest but did *783 not question him during the trip to Many. When defendant and Trooper Isgitt arrived at the Sheriff's office, they were joined by Deputy Wayne Turner.
Officer Isgitt testified to the following: that he read defendant his rights from the Waiver of Rights form; that defendant wanted to sign the form immediately, saying he knew what his rights were and that he just wanted to get it over; that both he and Deputy Turner, nevertheless, went over the rights with defendant; that he told defendant the matter was serious, and that a lawyer could be appointed.
Isgitt stated that he could smell alcohol upon defendant's breath, but that defendant did not appear to be intoxicated Isgitt decided to run an intoxication test before taking the statement. Defendant was thus informed about the test, and he consented to take it. The test disclosed that he was not intoxicated. A statement was then taken.
Deputy Wayne Turner testified that the waiver of rights form was given to defendant to read. After defendant said he had read it, Turner then read the rights aloud to him. He explained that defendant could have a lawyer if he wanted one. He asked defendant if he understood and defendant said "yes, there's nothing to it" and signed the form. According to Turner, the intoxication test was not given until after the statement was obtained.
Turner stated that defendant talked freely about the incident. Turner made handwritten notes on a paper pad while defendant was talking. He then typed up these notes and defendant signed the typewritten statement. Turner did not keep the handwritten notes, and they were not available at the hearing or the trial.
The testimony is conflicting as to whether the intoxication test was given before or after the statement was taken. The time, however, is not crucial. The gist of the testimony is that he was duly advised of his rights and voluntarily gave the statement. We conclude that the State discharged its burden of proof that the confession was free and voluntary.

ASSIGNMENTS OF ERROR NOS. 3 AND 4
Defendant objected during the trial to the introduction into evidence of the signed waiver of rights form and the signed typewritten confession. Defendant asserts that the documents should have been excluded from evidence because Deputy Turner destroyed his handwritten notes recording defendant's statement. Defendant argues that the handwritten notes may have differed from the typewritten statement and that there was a suppression of favorable evidence in violation of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).
Deputy Turner testified that he never keeps the notes he makes in preparation for typing a statement or confession. He stated that he read the statement to defendant after it was typed, and defendant voluntarily signed it.
In our opinion, the holding of Brady v. Maryland, supra, is inapplicable here. That decision applies only when the prosecution knowingly suppresses evidence that will either exculpate the defendant or reduce his sentence. No such suppression occurred in the present case.
For the reasons assigned, the conviction and sentence are affirmed.
NOTES
[1] By stipulation, the evidence is the same as that taken in State v. Hopkins, in which a writ was denied by this Court on March 6, 1975. We stated: "Relator has an adequate remedy by appeal in the event of conviction. Because of the absence of a clear showing of error and the time element, the court does not rule on the matter at this time." See State v. Hopkins, La., 309 So.2d 337 (1975).