347 So.2d 172 (1977)
STATE of Louisiana
v.
Billy TAYLOR.
No. 58915.
Supreme Court of Louisiana.
June 20, 1977.
*175 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Woodrow W. Erwin, Dist. Atty., Kurt F. Sins, Asst. Dist. Atty., for plaintiff-appellee.
James J. Gleason, III, Director, Public Defender Office, 22nd Judicial District Court, New Orleans, for defendant-appellant.
SANDERS, Chief Justice.
In 1971, a grand jury indicted the defendant, Billy Taylor, for aggravated kidnapping, a violation of LSA-R.S. 14:44. A jury found the defendant guilty, and the court imposed the death penalty. This Court affirmed the conviction, but remanded with instructions to sentence him to life imprisonment. La., 282 So.2d 491 (1973). The United States Supreme Court reversed.[1] 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975).
In 1975, another grand jury indicted him for the same offense. However, due to an error in the Clerk of Court's office, the State sought a new indictment.
On February 9, 1976, a grand jury indicted him for the aggravated kidnapping of Mrs. Louise Willie, Ernestine Willie, and Andrew Jenkins. On February 16, 1976, the District Attorney's office amended the indictment, reducing the charge to the simple kidnapping of Mrs. Louise Willie. LSA-R.S. 14:45. The defendant pled not guilty and not guilty by reason of insanity. A five-man jury returned a unanimous guilty verdict. The court found the defendant to be a fourth offender and sentenced him to fifty years imprisonment at hard labor. LSA-R.S. 15:529.1
The defendant appeals. He relies on twenty-one assignments of error for reversal of his conviction and sentence.
We adduce the following context facts:
The defendant entered a parked car in which Mrs. Louise Willie, her daughter, Ernestine, and her grandson, Andrew Jenkins, were passengers. By threatening Ernestine with a butcher knife, he forced Mrs. Willie to drive to Mandeville. There, on an abandoned road, he raped Mrs. Willie. Later, he *176 took their money and identification and released them.

ASSIGNMENT OF ERROR NO. 1
The defense moved for the appointment of a sanity commission to examine the defendant. The court appointed Dr. Healy, a coroner, and Dr. Bloom, a psychiatrist, to the commission.
At the sanity hearing, the court qualified Dr. Healy as an expert to testify to the defendant's present mental condition. Defense counsel objected without assigning any specific ground.
In State v. Sosa, La., 328 So.2d 889 (1976), we stated:
"However, it is well settled that counsel must state the basis for his objection when he makes it, pointing out the specific error which the trial court is allegedly making so that the trial judge has an opportunity to rule upon it. An assignment of error reserved to a trial court ruling where no basis for objection has been stated presents nothing for this Court's review. LSA-C.Cr.P. Art. 841; State v. Burgy, La., 320 So.2d 175 (1975); State v. Preece, La., 270 So.2d 850 (1972); State v. Andrus, 250 La. 765, 199 So.2d 867 (1967)."
As defendant failed to state a ground for his objection, this assignment of error is not reviewable.
Assuming, however, that we may treat this allegation, we find it ill-founded. The defendant's principle contention in brief is that Dr. Healy is not qualified under Louisiana Code of Criminal Procedure Article 644, since he has no expertise in the psychiatric field.
Article 644(A) requires only that a physician be licensed to practice medicine in Louisiana and actually practice medicine for three consecutive years prior to his appointment on a sanity commission. This article authorizes the court to appoint a coroner. See Official Revision Comment (a). A physician need not be a psychiatrist to be a member of the commission. State v. Vince, La., 305 So.2d 916 (1974); State v. Cloud, 246 La. 658, 166 So.2d 263 (1964).
Dr. Healy met the requirements of Article 644(A). See also LSA-C.Cr.P. Art. 647.
This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 2
At the conclusion of the sanity hearing, the trial court found the defendant competent to stand trial. Defense counsel objected. We find no error in the ruling.
The evidence strongly supports the finding that the defendant possessed the capacity to understand the proceedings and assist in his defense. See LSA-C.Cr.P. Art. 641.
The assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 3
The defendant complains of the admission of the sanity report into evidence at the sanity hearing. In brief he raises two grounds: that Dr. Healy was not qualified to sign the report and that the report was not the best evidence of its contents.
The defense advances the best evidence argument for the first time on appeal. Our law prohibits counsel from expanding his appellate argument to add a ground not raised at the trial level. LSA-C.Cr.P. Art. 841; State v. Rossi, La., 273 So.2d 265 (1973); State v. Jones, 250 La. 1007, 201 So.2d 105 (1967).
The defendant avers that Dr. Healy was unqualified to sign the sanity report because Dr. Bloom's diagnosis influenced Dr. Healy's diagnosis.
Initially, we note that Dr. Healy did make independent findings of the defendant's present mental ability.
The fact that Dr. Bloom's diagnosis admittedly influenced Dr. Healy's medical conclusions does not affect Dr. Healy's competency to sign the report. Rather, it goes to the weight given his testimony and diagnosis. The members of the sanity commission sign and issue the sanity report. See LSA-C.Cr.P. Art. 645.
This assignment of error is without merit.

*177 ASSIGNMENT OF ERROR NO. 4
The court ordered Dr. Healy and Dr. Bloom to examine the defendant and report on his present mental condition and his mental status on the date of the offense. See LSA-C.Cr.P. Arts. 643, 650. Dr, Bloom evaluated the defendant's sanity at both points in time, but Dr. Healy only determined his present sanity.
The defendant alleges that the court erred in ruling that the commission satisfactorily discharged its duty for Dr. Healy failed to evaluate the defendant's mental capacity at the time of the offense.
A defendant is not entitled of right to an examination and evaluation of his sanity at the time of the offense. LSA-C.Cr.P. Art. 650. Whether a sanity commission is directed to investigate his sanity at that time lies within the discretion of the trial judge. State v. Link, La., 301 So.2d 339 (1974) and the cases cited therein.
The issue of the defendant's sanity at the time of the offense is a jury question. The defendant could, as the trial judge noted, interrogate Dr. Healy on that issue at the trial. Defense counsel chose not to call him. See State v. Link, supra. However, he did extensively question Dr. Devillier, a psychiatrist called by the defense, and Dr. Bloom concerning sanity at the time of the offense.
The effect of the trial judge's ruling was to dispense with a supplemental report by Dr. Healy on sanity at the time of the offense. We find no abuse of discretion.
This assignment of error is without merit.

ASSIGNMENTS OF ERROR NOS. 5 AND 6
The defendant avers that the trial court erred in refusing to quash the 1971 and 1975 indictments.
Subsequent to trial, the State dismissed them. Thus, these complaints are moot.
These assignments of error are without merit.

ASSIGNMENT OF ERROR NO. 7
The defendant's fourth motion to quash contests the validity of the February 9, 1976 indictment. He alleges that women and blacks were systematically excluded from, or alternatively included in, the grand and petit jury venires.[2]
To support his allegation, he introduced the latest St. Tammany Parish census figures and data concerning the prospective juror's questionnaires. In addition, he called the St. Tammany Parish Clerk of Court for testimony.
This evidence indicates the following:
Females comprise 52% plus of the parish population and males 47% plus. Of the females, 82% plus are white, and 17% plus are black. Of the males, 83% plus are white, and 16% plus are black.
The Parish Jury Commission routinely selects every fifth or sixth name from the voting list, the telephone directory, and the Louisiana Gas Company's customer list. The Clerk of Court testified that there was no discrimination for or against any race or sex. She further explained that the persons canvassing the lists blindly select the names, that is, the persons choose prospective jurors by their numerical order on the lists. These lists make no reference to race. However, because of the prefix Mr. or Ms. or of the gender of the given name, the sex of a prospective juror is often ascertainable.
Each name selected receives a prospective juror's questionnaire. In this case, the commission sent out 776 questionnaires, 30% plus to females and 69% plus to males. When the questionnaires were returned, they were placed in the jury box. It is from this box that the Jury Commission picked the grand jury and petit jury venires. Thirty names were drawn for the grand jury venire, 6% plus females, 93% *178 plus males; and 100 names for the petit jury venire, 35% females, 65% males.
The grand jury was composed entirely of males. Of the 5 jurors chosen for trial, 3 were women, 2 were men.
To support a challenge made to the composition of a jury venire, the defendant must demonstrate that the State has not complied with the statutory procedures for the selection of the venire or that there has been systematic discrimination affecting that class in the selection of the jury panel. See State v. Haynes, La., 339 So.2d 328 (1976); State v. Jones, La., 332 So.2d 461 (1976); State v. Brown, La., 319 So.2d 409 (1975).
The only evidence introduced to support his allegation of exclusion, or alternatively inclusion, of blacks are the census figures. These figures reflect that approximately 17% of the total population is black. The record does not reflect the percentages of blacks sent the questionnaire, chosen for the grand or petit jury venire, or selected for grand or petit jury service. Without this evidence, comparison of percentages concerning blacks is impossible. State v. Nix, La., 327 So.2d 301 (1975). Clearly, defendant has fallen short of proving historic exclusion or inclusion of blacks.
As to women, the defendant contends that the selection of the jury venires from voting lists, telephone books, and utility subscribers denies him a fair cross section of the community since the latter two sources are predominately listed in male names.
We have approved of the compilation of jury panel names by random selection from voting registration rolls, telephone books, and utility lists. State v. Lynch, La., 323 So.2d 781 (1975); State v. Evans, La., 304 So.2d 338 (1974); State v. Foy, La., 278 So.2d 38 (1973); State v. Millsap, 258 La. 883, 248 So.2d 324 (1971). The defendant has failed to present specific evidence to support his allegation that these lists are predominately male.
This Court will not set aside a jury venire on a disparity between the percentages of women chosen for that venire and women comprising the parish population. Evidence of systematic exclusion, or inclusion, of a class, not mathematical variations of their percentages, is the determinative factor. State v. Bastida, La., 310 So.2d 629 (1975); State v. Watson, La., 301 So.2d 653 (1974).
We conclude that the defendant has not proven a systematic exclusion or inclusion of women in the jury venires.
This assignment of error is without merit.

ASSIGNMENTS OF ERROR NOS. 8, 9, 13, 14, AND 15
The defendant complains of the denial of his motion to suppress and the admission of the following three items: S-1, a note the defendant handed to Mrs. Willie; S-2, blue rubber gloves the defendant wore during the perpetration of the crime; S-3, a butcher knife the defendant held on Ernestine Willie.
Additionally, he contends that the trial judge erred in refusing to suppress the victims' identifications of the defendant.
On the night of the crime at approximately 11 p.m., Deputy Bulloch and Deputy Griffin saw the defendant walking on the side of a road. He wore large, loose boots, tight pants, and a shirt. He carried an airline flight bag. On the basis of the similarity between the radio description of the perpetrator and the defendant, they stopped him. He allowed them to search his flight bag. They found nothing significant. The officers neither searched nor patted down the defendant's person. The defendant willingly accompanied them to the police station. The officers had not yet arrested him.
En route to the station for identification, the defendant sat on the passenger's side of the rear seat of the police car. The officers placed the flight bag on the driver's side of the rear seat.
During this time, the Willies were at the police station. The police exhibited a suspect to them, but they stated that he was *179 not the offender. When the deputies brought the defendant into the station, they placed him in the interrogation room. He was alone. The Willies stood in an adjacent room and viewed him through a two-way glass. Both victims positively identified him as the perpetrator.
Based on this identification, Officer Bulloch arrested and booked him. Pursuant to the officer's demand, the defendant emptied his pockets. He surrendered his wallet, keys, money, and a small notebook. When advised that he had the right to make a telephone call, he asked Deputy Bulloch for his notebook which held a phone number. The officer secured the notebook and opened it. Inside, he found a note which read:
"I have just committed a robbery. I need a ride. No harm will come to you I do have a gun and will kill you."
Subsequent to defendant's arrest, Deputy Bulloch asked Captain Badon to retrieve any of the defendant's personal belongings from the police car. Deputy Griffin accompanied the captain. The deputy entered the car through the driver's side rear door. Because of the darkness, he flashed a light over the back seat area. He saw the rubber gloves and butcher knife under the passenger's side of the front seat. He alerted the captain and the captain gathered the articles. Captain Badon called Deputy Bulloch to advise him of the discovery of the gloves and knife. Then, the three items were turned over to Deputy Bulloch.
Deputy Griffin testified that the knife and gloves could be seen through the rear windows.
Deputy Bullock testified that the knife and gloves were not in his car prior to the apprehension of the defendant.
The defendant contends that the note was inadmissible as it was the result of a warrantless, unreasonable search and seizure.
The defendant surrendered his notebook to Deputy Bulloch during the normal booking procedure. Louisiana Code of Criminal Procedure Article 228 affirms the booking officer's authority to remove, inventory, and retain any of the arrestee's personal property. See also LSA-C.Cr.P. Art. 228.2.
In dealing with the inventorying and securing of personal property in an impounded automobile in South Dakota v. Opperman, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976), the United States Supreme Court stated:
"When vehicles are impounded, local police departments generally follow a routine practice of securing and inventorying the automobiles' contents. These procedures developed in response to three distinct needs: the protection of the owner's property while it remains in police custody; the protection of the police against claims or disputes over lost or stolen property; and the protection of the police from potential danger. The practice has been viewed as essential to respond to incidents of theft or vandalism." [Citations deleted.]
See also State v. Jewell, La., 338 So.2d 633 (1976).
Similarily, we find that the securing of an arrestee's property during booking is a reasonable incident of his arrest. This procedure is designed to protect the arrestee's property, the security of his incarceration, and the personal safety of those who come in contact with him. It is consistent with constitutional safeguards.
Moreover, it is well settled that an arresting officer has the right to search a person and seize evidence incident to a lawful arrest. State v. Breaux, La., 329 So.2d 696 (1976); State v. Tarver, La., 324 So.2d 382 (1975); State v. Williams, La., 304 So.2d 311 (1974).
We conclude that the trial court properly admitted the note into evidence.
The defendant contends that the butcher knife and blue rubber gloves found in the police car were inadmissible as the result of an illegal search and seizure. In State v. Winesberry, 256 La. 523, 237 So.2d 364 (1970), we held that evidence discarded on the floor of the police car in which the *180 defendant rode was abandoned property. As such, it was not within the ambit of the Fourth Amendment's protection.
We hold that the trial court properly admitted the butcher knife and blue rubber gloves into evidence.
Additionally, he complains of the denial of his motion to suppress the out-of-court identification and all evidence stemming from such identification. He avers that the out-of-court identification violated his due process guarantee and his constitutional right to counsel.
We note that the defendant failed to object to the testimony related to either the Willies' out-of-court or in-court identifications.
Neither the federal or state constitution guarantees the accused the right to counsel at a pre-indictment line-up. Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972); State v. Ball, La., 328 So.2d 81 (1976); State v. Johnson, La., 327 So.2d 388 (1976). Here, the Willies identified the defendant prior to indictment. Hence, he had no right to counsel at the out-of-court identification.
Assuming, without deciding, that the two-on-one identification was impermissibly suggestive, the defendant's due process rights were not infringed for the Willies' in-court identifications were properly admitted. State v. Williams, La., 341 So.2d 370 (1976); State v. Newman, La., 283 So.2d 756 (1973), and the cases cited therein.
A trial court properly admits an in-court identification if it has a source independent of the out-of-court identification. In this determination, three factors are relevant: (1) the prior acquaintance of the witness with the accused; (2) the length of time the witness observed the perpetrator before, during, and after the commission of the offense; (3) the circumstances under which the observation was made, i. e., the illumination at the scene, the witness's physical capacities, and the witness's emotional state at the time of the observation. State v. Frank, La., 344 So.2d 1039 (1977); State v. Fortenberry, La., 307 So.2d 296 (1975); State v. Moseley, La., 284 So.2d 749 (1973).
Neither Mrs. Willie or Ernestine knew the defendant prior to the commission of the offense. At their initial encounter with him, street lights and store lights illuminated the area. The defendant held the victims in a car for approximately one hour. During this time the defendant turned the dome light on twice: once to search purses, and another time to examine a cut on Ernestine's arm. The majority of the time, he sat in the back seat with Ernestine, holding the butcher knife to her side. Mrs. Willie saw the defendant at close range when he raped her. Although sometimes frightened and emotionally upset, Ernestine positively identified the defendant as the perpetrator. At all times Mrs. Willie remained calm.
We are convinced that the in-court identifications had sources independent of the out-of-court identifications. Therefore, the admission of the out-of-court identifications did not violate the defendant's due process rights.
These assignments of error are without merit.

ASSIGNMENT OF ERROR NO. 10
Near the close of the State's opening statement, the following exchange occurred:
[ASSISTANT DISTRICT ATTORNEY]:
"I made a lot of promises to you, and after every incident, I said we will prove, and I did that for a reason.
"The burden is on the State. When I stand up here, in closing argument, I am going to say not that we will prove, but that we have proved."
[DEFENSE COUNSEL]:
"I object. This goes beyond the scope of the opening argument."
THE COURT:
"It doesn't carry the weight; proceed."
* * * * * *
[ASSISTANT DISTRICT ATTORNEY]:

*181 "What I said to you just now is not evidence; don't accept it as such. It is me telling you the manner we will prove the offense that he is charged with.
"The burden is on me to do what I have said through the State of Louisiana.
"Ladies and gentlemen, if you listen intently and if you judge wisely, we submit that we will offer proof of guilt of the defendant as he is charged. Thank you."
(Trial transcript pp. 100-101.)
Louisiana Code of Criminal Procedure Article 766 reads:
"The opening statement of the state shall explain the nature of the charge, and set forth, in general terms, the nature of the evidence by which the state expects to prove the charge. [Emphasis supplied.]
The above article contemplates statements as to what the State intends to prove. Thus, the prosecutor's remarks were entirely proper. See State v. Dowdy, 217 La. 773, 47 So.2d 496 (1950).
The assignment of error is without merit.

ASSIGNMENTS OF ERROR NOS. 11 AND 12
The defendant complains of the trial court's rulings on two defense objections made during the examination of Deputy Bulloch.
Deputy Bulloch, the arresting and booking officer, testified that after the booking he asked Captain Badon to search the police car for any of the defendant's personal belongings. The prosecutor then asked:
"Based upon the search of the [police] vehicle, was any evidence turned up?"
Deputy Bulloch replied:
"Yes, sir."
(Trial transcript p. 146.)
Defense counsel objected on the basis that such testimony was hearsay as the witness did not search the vehicle.
Louisiana Revised Statute 15:463 provides:
"Except as otherwise provided in this Code, the witness can testify only as to facts within his knowledge, and neither as to any recital of facts heard by him, nor as to any impression or opinion that he may have."
A witness may testify as to a natural inference from something he has observed. State v. Neal, La., 321 So.2d 497 (1975); State v. Davalie, La., 313 So.2d 587 (1975); State v. Kirklin, La., 283 So.2d 713 (1973).
Deputy Bulloch asked Captain Badon to check the police car for any of the defendant's personal articles. Approximately forty minutes later, Captain Badon displayed the flight bag, knife, and gloves to the deputy. Deputy Bulloch had prior knowledge of the presence of the flight bag in the car. Therefore, Deputy Bulloch's answer was a natural inference.
Assuming that the testimony constituted inadmissible hearsay, the judge's ruling did not prejudice the defendant. On re-direct examination, the prosecutor elicited the same testimony from Deputy Bulloch without defense objection. Moreover, Deputy Griffin, the officer who accompanied Captain Badon in searching the vehicle, testified that he and the captain removed the knife and gloves from the car. Therefore, Deputy Bulloch's testimony was merely cumulative. LSA-C.Cr.P. Art. 921; State v. Miles, La., 339 So.2d 735 (1976).
We conclude that the defendant's first objection was ill-founded.
His second objection occurred when the prosecutor asked Deputy Bulloch the following question:
"May I see the knife.
"Was this subsequently turned over to you on the evening of the 28th of September, 1971?"
(Trial transcript p. 147.)
Defense counsel objected on the ground that this was a leading question.
The witness never answered the question propounded. Hence, there is no *182 valid ground to complain. LSA-C.Cr.P. Art. 921; State v. Sharp, 174 La. 860, 141 So. 859 (1932). See State v. Brantley, 169 La. 315, 125 So. 257 (1929).
These assignments of error are without merit.

ASSIGNMENT OF ERROR NO. 16
At trial two physicians testified that the defendant suffered from a severe personality disorder, anti-social type, at the time of the offense. Both opined that the defendant was not psychotic.
On the State's rebuttal during the defense's cross-examination of Dr. Bloom, counsel asked him if he was familiar with medical cases in which a patient's psychotic condition was remissive and, therefore, not readily apparent. Dr. Bloom answered yes. Defense counsel then asked:
"Let me give you an example. Are you familiar at all with the Boston Strangler case?"
(Trial transcript p. 277.)
The State objected on the ground of irrelevance, and the court sustained the objection. The trial judge noted that this line of questioning dealt with possibilities, not probabilities, and that this testimony would only confuse the jury.
The defendant complains of this ruling.
The trial judge has wide discretion in controlling the examination of witnesses on collateral matters. LSA-R.S. 15:275. The determination of the relevancy of any testimony also lies within the discretion vested in the trial judge. State v. Nero, La., 319 So.2d 303 (1975); State v. Owens, La., 301 So.2d 591 (1974). See LSA-R.S. 15:435, 441.
The similarity between the remissive psychotic condition of another person and the defendant's mental disease is irrelevant to the defense of insanity. The law exempts an accused from criminal responsibility only if, because of a mental disease or defect, he was incapable of distinguishing between right and wrong at the time of the offense. LSA-R.S. 14:14. Both doctors testified that the defendant possessed the facilities to distinguish right from wrong. Defendant's questioning of Dr. Bloom on a possible mental disease previously undiagnosed does not tend to negate the necessary mens rea. See LSA-R.S. 15:441. Thus, the trial judge did not abuse his discretion.
Moreover, the court, without any objection from the State, allowed defense counsel to examine Dr. Bloom on the probability of the defendant being in a state of remissive psychosis. As the defendant obtained the information sought, we find he was insulated from any prejudice if, in fact, the ruling was erroneous. LSA-C.Cr.P. Art. 921; State v. Nero, supra.
This assignment of error is without merit.

ASSIGNMENTS OF ERROR NOS. 17 AND 18
During the State's closing rebuttal argument, the State urged the jurors to reject the insanity argument advanced by the defense in closing argument. The prosecutor then stated:
"Let's do two things: First of all, for the next few moments, let's forget about the doctors and what they said about him, and let's look at what Ernestine said and what Mrs. Willie said."
(Trial transcript p. 327.)
The defendant objected on the basis that this statement exceeded the scope of his closing argument as he did not comment on the Willies' testimony, and therefore, was improper rebuttal.
The court stated:
"I am overruling the objection. It seems to me what we are talking about now is the insanity aspect; talking about the facts that led up to this position, and the knowledge of the jury, . . ."
(Trial transcript p. 328.)
The defendant then moved for a mistrial alleging that the trial judge impermissibly commented on the evidence.
Louisiana Code of Criminal Procedure Article 774 confines the scope of the State's *183 rebuttal argument to "answering the argument of the defendant."
The defense's argument predominantly urged an insanity defense. Counsel particularly referred to the physicians' and the defendant's sister's testimony to support his position. The State's rebuttal argument refuted the defense's stance on insanity. By referring to the Willies, he merely directed the jury's attention to their testimony to prove his theory. Clearly, the prosecutor's comment in closing rebuttal argument was proper. See State v. Cole, 161 La. 827, 109 So. 505 (1926).
Louisiana Code of Criminal Procedure Article 772 prohibits a judge from commenting on the facts of the case in the presence of the jury. However, in his statement, the judge simply pointed out that the closing arguments concentrated on the insanity issue. This was not a comment on the facts.
Moreover, we believe that his remarks were proper as they fall within an exception to Article 772. A trial judge's remarks made while giving reasons for a ruling are not objectionable as comments on the case provided they are not unfair or prejudicial to the accused. State v. Lane, La., 302 So.2d 880 (1974); State v. Hills, 241 La. 345, 129 So.2d 12 (1961). As these statements made by the judge while ruling on an objection are not unfair or prejudicial, the judge correctly denied his motion for a mistrial.
These assignments of error are without merit.

ASSIGNMENT OF ERROR NO. 19
In his closing argument the court permitted over a State objection, defense counsel to read Louisiana Code of Criminal Procedure Articles 654-657 to the jury. These articles explain the effect of acquittal on the ground of insanity. At that point, defense counsel announced that he would not submit any special jury instructions to the court.
After the judge charged the jury, the defendant orally requested that the court instruct the jury as to the consequences of a not guilty by reason of insanity verdict. The court denied the request. The defendant complains of this ruling.
Counsel has the right to submit to the court special written charges for the jury before argument. The court in its discretion may receive such charges after argument has begun. LSA-C.Cr.P. Art. 807.
In this instance the denial of an oral request for special charges made after the court instructed the jury was not an abuse of the court's discretion. See State v. Senegal, La., 333 So.2d 639 (1976); State v. Blanton, La., 325 So.2d 586 (1976). This is especially true where, as here, the defense counsel had read the applicable law and assured the court that he would not submit any special instructions.
This assignment of error is without merit.

ASSIGNMENTS OF ERROR NOS. 20 AND 21
The defendant contends that the trial judge erred in denying his motion to quash the multiple offender charge and in ruling that he was a fourth offender.
The State attributed the following crimes to the defendant in the habitual offender prosecution:
1. Theft (guilty plea entered February 19, 1964).
2. Theft (guilty plea entered February 19, 1964).
3. Simple escape (guilty plea entered December 7, 1964).
4. Simple kidnapping (convicted June 7, 1976).
The judge found the defendant to be a fourth offender and sentenced him to fifty years imprisonment at hard labor.
Two of our recent decisions, State v. Schamburge, La., 344 So.2d 997 (1977) and State v. Cox, La., 344 So.2d 1024 (1977), warrant our vacating defendant's sentence.
*184 Under our holding in Schamburge, both theft offenses must be treated as one offense in applying the multiple offender statute because the defendant had not been convicted of the first theft prior to the commission of the second. LSA-R.S. 15:529.1 B; State ex rel Jackson v. Henderson, La., 283 So.2d 210 (1973). Hence, as the defendant pled guilty to both offenses on the same date, the trial court improperly considered them as separate offenses.
In Cox, we recognized that a simple escape conviction (a violation of LSA-R.S. 14:110 A(1)) enhances a prior conviction, as the status of felon is a prerequisite to this simple escape conviction. Thus, the State may not use that simple escape conviction as a basis for charging the defendant as an habitual offender. To do so would enhance that previous conviction twice. In Cox, we stated:
"The Habitual Offender Law was enacted in 1956 and amended in 1958. Since then the simple escape statute has been amended numerous times, most recently in 1976, and the legislature has given no indication that it should be applied in tandem with the recidivist law. The escape statute itself causes an enhancement of penalty by requiring consecutive sentences and because of a defendant's previous felony conviction. Although the legislature chose to make the enhancement to a felony dependent upon a defendant's escape from the Department of Corrections instead of relating the enhancement directly to his previous commission of a felony, we see no real difference because only convicted felons may be sentenced to the Department of Corrections. In any event, there is sufficient doubt that the penalty for a simple escape should be escalated twice by what may be an unforeseen combination of two criminal statutes, and in the absence of an explicit legislative authorization, we will construe the law strictly by refusing to give it such an expansive interpretation." [Footnote deleted.]
See also State v. Sanders, La., 337 So.2d 1131 (1976).
Thus, the trial court improperly considered the offense of simple escape in determining the defendant's multiple offender status.
For the reasons assigned, the conviction is affirmed. The sentence is vacated and set aside. The case is remanded to the trial court for sentencing consistent with the views herein expressed.
NOTES
[1] The Court held that Louisiana law governing jury service by women violated the defendant's Sixth and Fourteenth Amendments rights.
[2] The defendant failed to brief or argue the other grounds asserted in the motion. Hence, we consider them abandoned.