SUMMERS, Justice.
The district attorney for the Parish of Orleans filed a bill of information charging that on December 19, 1972 Thomas Andrew Thornton committed aggravated burglary “in that he did, without authorization, enter an inhabited dwelling and structure, to-wit: 2058 N. Prieur St. Apt. B., belonging to one CAROL ANN CADO, where a person was present, to-wit: one CAROL ANN CADO, with the intent to commit a theft therein, and after entering therein, armed himself with a dangerous weapon, to-wit: a knife . . .”. La.R.S. 14:60.
Thornton was tried, convicted and sentenced to the custody of the Director of Corrections for seven years. On this appeal five bills of exceptions are urged to support his motion for a new trial.
According to the defense brief a man attempted to and did break into the apartment of Carol Ann Cado on December 19, 1972. He was dressed only in his underwear. Once inside the apartment, he picked up a knife, and the occupant of the apartment, Carol Ann Cado, took refuge in the nearby apartment of Ernestine Jones. Thornton followed and began beating on the door to the Jones apartment. Ernestine Jones then called the police. After some further disturbance, the man ran out into the street and hid under an automobile parked in front of the apartment house. Shortly thereafter, he was identified by the Cado woman as he was pulled from beneath the vehicle.
A motion to suppress this in-field identification was filed on January 10, 1973 alleging that Thornton, the defendant, was *755 viewed under circumstances which suggested that he was the perpetrator of the crime for which he is charged, contrary to principles announced in United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), and Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). The motion to suppress further alleged that the suggestion referred to so tainted the identification that he was denied due process.

Bill of Exceptions No. 1

A hearing was held on the motion to suppress. At the conclusion of the hearing, the trial judge denied the motion. This bill was reserved. The identification by the Cado woman took place minutes after the offense occurred, on the street immediately in front of the Cado apartment. She and the neighbor emerged from the apartment to meet the police officers and explain their complaint. It was at that time defendant was discovered underneath the automobile “like he was dead”, she testified. Recognizing him at once, she exclaimed, “that’s him there”, and he was taken from beneath the car and arrested. She explained later at the hearing that having seen him “eyeball to eyeball at my back door” she was positive it was him. The accused was also identified by Ernestine Jones at this time. Both testified at the hearing that the identification was made without any suggestive action on the part of the police.
This was in-field identification, nearly contemporaneous with the commission of the crime. It is the type “single-suspect confrontation”, to use the defense counsel’s term, to which the requirements of United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967) are inapplicable. No lineup is required in such an identification and, of course, counsel for the accused is not required to be present. See Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972); State v. Neal, 275 So.2d 765 (La.1973); State v. Bland, 260 La. 153, 255 So.2d 723 (1971); State v. Richey, 258 La. 1094, 249 So.2d 143 (1971).

Bill of Exceptions No. 2

Initially, this case was allotted to Section “C” of the Criminal District Court. On the day fixed for trial, the judge of Section “C” transferred the case to Section “E”. Prior to trial, the judge of Section “E” explained to counsel and to the prospective jurors assembled that the transfer was made because two cases had been set for trial in Section “C” on this date, and the judge of that section had elected to try the other. The instant case was accordingly transferred to Section “E” to accommodate counsel who had announced ready for trial.
Also, the transfer was announced to be in keeping with a policy adopted by the judges of the various sections of the court to expedite the trial of cases when one section was busy and another was not. Thereby, it was stated, the accused is given a speedy trial and the overcrowded conditions in the parish jail are alleviated.
At this time, counsel for the defense, without stating his reason, objected to the transfer. The objection was overruled and this bill was reserved. The bill of exceptions later perfected set forth that the preliminary motion to suppress the identification had been heard in Section “C”, the case had been allotted to Section “C”, and on the day set for trial the case was transferred to Section “E”. No other reasons were assigned.
However, in brief to this Court, defense counsel refers to Article VII, Section 86 of the Constitution which provides that all cases in the Criminal District Court for the Parish of Orleans “shall be equally allotted” among the judges who shall have exclusive control over the cases allotted to him from its inception to final disposition.
“Provided, however, the said judges shall have authority to provide by rule *756 for the exercise of jurisdiction by any judge over any case previously allotted.” (emphasis added)
Acting upon the authority thus conferred, it is represented that Rule VIII, Section 4 was adopted by the judges of the court. The rule permits the transfer of cases “as often as may be necessary for the proper expedition of the business of the Court, upon motion of the State or the defendant,” and with the consent of the judges involved. Absence or disability of one judge or a vacancy in his office permits another judge to act in his stead.
Defense counsel’s argument in support of his objection and this bill is that authority was delegated by the Constitution to the judges to adopt rules governing the transfer of cases, and the rule adopted provided that transfers were to be made “upon motion of the State or the defendant.” Therefore, unless such a motion is presented, the transfer is ineffective.
Actually, the transfer had already been accomplished before defense counsel lodged his objection. The objection was therefore not timely. Moreover, as noted, at the time the objection was made, no reasons were assigned. Nor does the perfected bill suggest why the transfer was considered objectionable by the defense. So far as this record is concerned, the reason for the defense objection is asserted for the first time in this Court.
Obviously, if defense counsel had made known to the trial judge and the prosecuting attorney that he was objecting to the transfer because no motion to transfer had been made by the State or the defense, then the district attorney, who did not object to the transfer, would have promptly satisfied defendant’s objection by filing such a motion. Further, defense counsel did not attach to his bill the record of what transpired in Section “C”, the court from which the case was transferred. This record does not reflect what happened there.
The basis for objections to trial irregularities or errors should be stated at the time they occur. Counsel cannot wait, with an anchor to windward, to urge the irregularity for the first time after conviction. An objection without stating the grounds gives the trial judge no opportunity to correct the alleged error. La.Code Crim.Proc. art. 841. The mere statement of an objection is insufficient; State v. Andrus, 250 La. 765, 199 So.2d 867 (1967); State v. Melerine, 236 La. 881, 109 So.2d 454 (1959); State v. Pearson, 224 La. 393, 69 So.2d 512 (1953); the specific ground should be pointed out, State v. Ricks, 170 La. 507, 128 So. 293 (1930).
Alternatively, the State argues that the bill has no merit. The per curiam of the trial judge makes it clear that the transfer was made by agreement between the judges of Section “C” and “E”. It cannot be denied that the rule’s objective to expedite the business of the court was served by the transfer. The requirement of a motion by the State or the defense is directory. We do not consider it to be sacramental to the validity of the transfer when the transfer has otherwise been approved by the judges affected. There was a substantial compliance with the rule.
The purpose of the law relating to the allotment of cases is to insure an equal distribution among the sections of the court. State v. Roth, 226 La. 1, 74 So.2d 392 (1954). This requirement has been satisfied in this case. Another and important reason for the allotment system is to assure the litigant that his case has been fairly assigned without the intervention of capricious or biased persons. No claim is made that this purpose was violated in the instant case. To the contrary, the reasons for the transfer were fully and fairly stated by the trial judge and were necessarily apparent to the defendant. State v. Booth, 232 La. 365, 94 So.2d 290 (1957).
In this day of congested court dockets and overcrowded prisons, the expeditious *757 conduct of court business is a matter of considerable importance in the administration of justice. Against this consideration, the sole prejudice the defense states that he suffered by the transfer was that he was not given sufficient time by the Judge of Section “E” to obtain a transcript of the hearing held on the motion to suppress identification from the court reporter of Section “C”. This argument has no merit. The two sections are in the same building, and the transcript could be obtained just as readily from Section “C” as it could have been from Section “E”. The transfer presented no obstacle in this respect.
No prejudice to the defendant resulted by the transfer. La. Code Crim.Proc. art. 921.

Bill of Exceptions No. 3

After the twelve man jury was selected, defense counsel filed a motion to quash the bill of information alleging “The general venire or the petit jury venire was improperly drawn, selected or constituted”. In his oral argument in connection with the presentation of the written motion to quash, counsel argued that because of the transfer he had no opportunity to familiarize himself with the jury panel being used in Section “E”, or to inquire into the legality of its composition. He then moved for a subpoena duces tecum to compel the production of the records of the jury commission.
The trial judge declined to interrupt the trial at that stage, but granted counsel the right to supplement his motion and hear testimony on the issue at a later date if counsel so desired. Counsel did not thereafter reurge the matter. This bill is not well founded.

Bill of Exceptions No. 4

Ernestine Jones was being cross-examined by defense counsel at the trial. She had testified previously at the pretrial motion to suppress identification. At the pretrial hearing she testified that she could not identify the accused as the person who broke into the Cado apartment, but she could identify him as the person who attempted to break into her apartment. She testified to the same effect on cross-examination at the trial. At that time defense counsel requested permission to have the testimony taken at the pretrial hearing read to the jury to impeach the witness’ testimony for, he' argued, her previous testimony would disclose an inconsistency. When the request was denied, apparently because some delay would be involved in obtaining a transcript of the pretrial hearing, counsel then reserved this bill.
The record is before us and there is in fact no prior inconsistent statement, a necessary predicate to an attempt to impeach a witness. La.R.S. 15 :490.
This bill has no merit.

Bill of Exceptions No. 5

This bill is based upon the contention that in his charge to the jury, the trial judge instructed the jury on matters beyond the scope of the specific crime charged. In essence the argument is that defendant was charged with aggravated burglary, with intent to commit a theft, and it was error for the trial judge to define felony or battery. It is argued that the jury would be led to believe from this that the commission of felonies, other than theft, would satisfy the charge.
Although the trial judge furnished defense counsel with a copy of his written charge to the jury before it was delivered, counsel made no request for changes, or additions, nor did he object in advance. It was not until the charge was read to the jury that counsel objected. He did not then request that supplemental or corrective charges be read to the jury.
The judge read the charge to the jury as contained in the bill of information. He *758 then read Article 60 of the Criminal Code[1] and thereafter defined the elements of the crime, including theft, battery and felony. This charge was then followed by a definition of simple burglary, a lesser included offense of the crime of aggravated burglary.
We do not believe that the jury was misled by these instructions. The instructions to the jury should be complete. In this connection the trial judge has considerable discretion in expounding the principles of law which will enable the jury to arrive at a correct verdict. By defining all the elements of the crime of aggravated burglary, the jury was enabled to determine by contrast the true meaning of theft. These instructions were also appropriate in order to enable the jury to comprehend the technical meaning of the terms “battery” and “felony” as used in the statute and thereby avoid misapplying them. This bill is without merit.
For the reasons assigned, the conviction and sentence are affirmed.
DIXON, J., concurs.
BARHAM, J., dissents with reasons.

. La.Crim.Code art. 60:
Aggravated burglary is the unauthorized entering of any inhabited dwelling, or of any structure, water craft, or movable where a person is present, with the intent to commit a felony or any theft therein, if the offender,
(1) Is armed with a dangerous weapon; or
(2) After entering arms himself with a dangerous weapon; or
(3) Commits a battery upon any person while in such place, or in entering or leaving such place.
* Jje # % #