344 So.2d 997 (1977)
STATE of Louisiana
v.
Phillip SCHAMBURGE, Jr.
No. 58732.
Supreme Court of Louisiana.
April 11, 1977.
*998 James A. Gray, II, Baton Rouge, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Ossie B. Brown, Dist. Atty., Doug P. Moreau, Marilyn C. Castle, Asst. Dist. Attys., for plaintiff-appellee.
SANDERS, Chief Justice.
The State charged Phillip Schamburge, Jr., with armed robbery, a violation of LSA-R.S. 14:64. After trial, the jury found the defendant guilty. The State filed a bill of information charging defendant with being an habitual offender. The trial judge found the defendant to be a second offender and sentenced him to thirty-five years imprisonment.
Defendant appeals his convictions and sentence, relying upon five assignments of error.[1]
The armed robbery occurred at approximately 1:30 a. m., on the morning of March 21, 1976, when Phillip Schamburge, Jr., and an accomplice, Lester Sims, entered the Stop & Go convenience store in Baton Rouge. Schamburge was armed with a sawed-off shotgun. He approached the clerk and indicated that he wanted the money in the register by pointing the shotgun *999 alternately at the cash register and then at the clerk. The clerk handed Schamburge fifty to sixty dollars from the register. Sims and Schamburge then moved toward the door to leave the store.
When they reached the door, Sergeant Robert Wayne Cupit of the Baton Rouge Police Department, who had been patrolling in the vicinity, drove up to the store intending to make a purchase. As he stepped out of his patrol car, he encountered the robbers leaving the store. Before Sergeant Cupit realized that a robbery was in progress, Schamburge pulled the shotgun from behind his leg and aimed it at him. The officer was able to grab the shotgun, train his own revolver on Schamburge, and thus disarm that robber. The officer having subdued Schamburge, ordered him to take a position against the police car. However, as Sergeant Cupit turned aside to prevent the other robber from getting away, Schamburge escaped. He later turned himself in to the police.

ASSIGNMENT OF ERROR NO. 1
In Assignment of Error No. 1 defendant complains that he was not given proper "Article 768 notice" that the State intended to use certain of defendant's inculpatory statements made after arrest. Relying upon State v. Sneed, La., 316 So.2d 372 (1976), the defendant specifically contends: that the notice given did not indicate who the police officers were, or where the statements were made; that the wording of the notice was ambiguous; that the notice did not inform him of the exact nature of the inculpatory statements, or of the number of statements that the State intended to use.
Defendant's contention is not properly before us. When the statements were introduced into evidence, he failed to object on the basis that the requisite notice was not given. LSA-C.Cr.P. Art. 841. Defendant first complained of deficiencies in the notice after the close of the State's case when he filed his motion for a directed verdict. The complaint was untimely.
Assignment of Error No. 1 is without merit.

ASSIGNMENT OF ERROR NO. 2
In his second assignment of error, defendant complains of the involuntariness of his three oral inculpatory statements. He alleges that a police officer made threats to his mother regarding a "dead or alive bulletin" being issued. He argues that the threats coupled with his crying during the first statement, his not wanting to sign anything until he saw an attorney, and there being no testimony by the first officers who took him into custody is evidence that the statements were not freely and voluntarily made.
Defendant's mother testified that Sergeant Guidry visited her home and stated that a "dead or alive bulletin" was being issued; that if Guidry had been the officer who confronted defendant at the convenience store, he would have killed Schamburge; that defendant was lucky to be alive; and that if defendant was found in the streets, he would be killed.
Sergeant Guidry denied making these statements to defendant's mother. Assuming, however, that her testimony is correct, the conversation has no bearing on the voluntariness of defendant's statements because the threats were never communicated to the defendant. Uncommunicated threats could not have affected the voluntariness of defendant's statements.
Defendant's other complaints are likewise without merit. The State presented evidence at the hearing on the motion to suppress that Schamburge was advised of his rights immediately after his arrest and before he made any inculpatory statements. Officers testified that Schamburge stated that he wanted to make a statement although he would not sign it until he had seen an attorney and that he made the statements freely and voluntarily.
The evidence adduced at the hearing on the motion to suppress clearly indicates that defendant's statements were voluntarily and freely made.
A trial judge is vested with much discretion in determining whether an inculpatory *1000 statement is given voluntarily. His ruling should not be disturbed on appeal unless clearly erroneous. State v. McSpaddin, La., 341 So.2d 868 (1977); State v. Simmons, La., 340 So.2d 1357 (1976); State v. Hills, La., 337 So.2d 1155 (1976).
Assignment of Error No. 2 is without merit.

ASSIGNMENT OF ERROR NO. 3
Herein defendant complains that the trial court "erred in refusing to examine the District Attorney's file to see if there was favorable evidence to the defendant which the District Attorney had refused to relinquish."
The defendant requested any exculpatory evidence. The court granted this motion in ruling that if the State had any exculpatory evidence, it should produce it. The State responded that it had none. Thus, the defendant cannot complain of the trial court's ruling which was in his favor.
Additionally, because defendant did not request that the court make an in camera examination of the State's file for exculpatory evidence, he cannot now complain of the lower court's failure to do so.
On the merits, defendant bases his assignment upon the descriptions of defendant given immediately after the robbery to the police by the store clerk and Officer William Cupit, the officer who encountered the robbers. Defendant argues that the two descriptions given immediately after the robbery were so different from Schamburge's appearance, that they were exculpatory rather than inculpatory evidence. The specific discrepancy to which defendant refers is whether his complexion is that of a medium skinned black man or a dark skinned black man of medium height and build.
We agree with the State's conclusion that the descriptions are not so inaccurate as to be considered exculpatory and thus available to the defendant under Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The two witnesses described defendant as a black man of average height and build. That description did not exclude the defendant. It should, of course, be noted that both witnesses identified defendant in court as the assailant.
Assignment of Error No. 3 is without merit.

ASSIGNMENT OF ERROR NO. 5 (SPECIFICATION OF ERROR NO. 4)
In Assignment of Error No. 5, defendant complains that the trial court erred in coercing the jury to reach a verdict.
Two hours and fifty minutes after the jury retired for deliberations, the jury was recalled to the courtroom. The minutes reflect that defendant was present with counsel. The following exchange took place between the jury foreman and the trial judge:
"BY THE COURT: All right, Mr. Foreman, do you think the jury is anywhere near coming to an accord on a verdict, or not?
THE FOREMAN: Right at this point in time, Your Honor, I cannot sayin my own estimateI cannot give an estimate as to the time. I know we are discussing and deliberating the points and questions that have arisen in our minds due to the testimony that has been given before us, and, honestlyin all honesty, Your Honor, I cannot give an estimation of time.
BY THE COURT: Well, I wasn't asking you for an estimation. I was asking you if there was any reasonable hope that you all could agree on a verdict.
THE FOREMAN: Yes, I think so.
BY THE COURT: Do you think that if Iyou've been out almost three hours; do you think that if I let you trygo back and try some more for maybe another thirty minutes or so, that you might be able touh reach a verdict?
THE FOREMAN: Thirty minutes? I don't think so, Your Honor.
BY THE COURT: Well, without telling us what the vote is, tell me this, if *1001 you are able to at this pointwhat is the split in the vote? I mean, numerically; I don't want to know what it is either way, but I just want to get an idea of the split there.
THE FOREMAN: Your Honor, at this time, we have no split in the vote per se. We do have questions that have arisen that we're trying to clear up.
BY THE COURT: Well, I will remind you that it takes ten out of twelve to agree upon a verdict. Once ten of you have agreed upon a verdict, that that (sic) ought to be the verdict
THE FOREMAN: Yes sir.
BY THE COURT: that it does not have to be unanimous. Of course, we'd all prefer if it's unanimous, but it does not have to be. Well, I'm going to send you out for about another thirty minutes, to see if you all can't come up with a verdict, and then we'll check with you.
THE FOREMAN: Yes, sir.
BY THE COURT: Each of you should uhbefore you goshould consider the other jurors' views and weigh it against your own conclusions. O.K. Retire the jury."
Defendant argues that the above colloquy establishes that the trial judge pressured the jury to reach a verdict. The minutes reflect that the jury returned some thirty minutes later with an unanimous verdict of guilty. Defendant cites State v. Nicholson, La., 315 So.2d 639 (1975), arguing that the judge's comments to the jury require the reversal of his conviction.
Initially, we note that defendant did not contemporaneously object to the judge's action. Hence, his assignment of error should not be considered. LSA-Code of Criminal Procedure Article 841. State v. Knight, La., 323 So.2d 765 (1975); State v. Mitchell, La. 319 So.2d 357 (1975); State v. Thornton, La. 284 So.2d 753 (1973). However, assuming a proper objection, we find no merit in the assignment of error.
In Nicholson, this Court attempted to insure that the juries not be coerced into reaching a verdict. It stated:
"[T]he general principles which govern jury deliberations are undermined and weakened when an `Allen charge' is given in response to notice that the jury has failed to reach a verdict and considers itself deadlocked. Each time a general principle applicable to deliberation is stated, it is modified by a remark apparently calculated to render the desirability of reaching a verdict foremost in the jurors' minds."
Unlike the Nicholson jury, this jury was not deadlocked. The instant jury appears never to have taken an initial vote. The jury foreman specifically stated that he thought the jury could reach a verdict. He indicated that the jurors had not reached an impasse in their deliberations. The trial judge did no more than make a general inquiry as to prospects for a verdict and reminded the jury that ten of the twelve had to agree upon a verdict.
Article 808 of the Louisiana Code of Criminal Procedure contemplates the giving of further charges after the jury has begun its deliberations. Two major limitations apply to supplemental charges. The trial judge may not comment upon the facts of the case. LSA-C.Cr.P. 806. Nor may the trial judge coerce the jurors into agreeing on a verdict. See State v. Rodman, 208 La. 523, 23 So.2d 204 (1945).
Assignment of Error No. 5 is without merit.

ASSIGNMENT OF ERROR NO. 6
In defendant's last assignment of error, he contends that the trial court erred in finding him to be a multiple offender.
After the jury found defendant guilty of armed robbery, the State filed a bill of information charging him with being a multiple offender under LSA-R.S. 15:529.1. The trial judge considered defendant's three previous simple burglary convictions of February 27, 1964. On June 30, 1964, defendant received the following sentences: simple burglary conviction number 49285 three years at hard labor; simple burglary *1002 conviction number 49286two years at hard labor, this sentence to begin at the expiration of the three year sentence imposed in 49287; simple burglary conviction number 49237three years at hard labor, that sentence to begin at the expiration of the two year sentence imposed in 49285.
The trial court correctly found defendant guilty of being a second offender by considering defendant's three previous convictions received on the same date as one conviction. In State ex rel. Jackson v. Henderson, La., 283 So.2d 210 (1973), we held that four previous convictions entered on the same date should be treated as one for applying the multiple offender statute.
Defendant argues that he should not have been sentenced as a second offender because the multiple offender statute is inapplicable by its own terms:
"This Section shall not be applicable in cases where more than five years have elapsed since the expiration of the maximum sentence, or sentences, of the previous conviction, or convictions, and the time of the commission of the last felony for which he has been convicted."
Defendant contends that because he was sentenced on June 30, 1964, for three simple burglary convictions to serve three years, three years, and two years at hard labor, the maximum sentence which he received was three years. He argues that because more than five years have elapsed since the expiration of his maximum sentence of three years, he cannot be a multiple offender within the meaning of the statute.
The court, however, aggregated defendant's three consecutive sentences and thus concluded that his maximum sentence was eight years. Since five years had not elapsed since 1972, the year in which an eight year sentence imposed in 1964 would expire, the court sentenced defendant as a second offender.
The question presented is res nova. In State ex rel. Jackson v. Henderson, supra, we held that prior convictions entered on the same date are considered one conviction for the purpose of the multiple offender statute.
It follows logically, therefore, that if three convictions are considered one conviction, then the sentence imposed on "that sui generis last previous felony conviction" is the actual number of years which the court sentenced defendant to serve for his wrongdoing. In the instant case, the defendant received three years plus two years to begin at the expiration of the three years, plus three more years to begin at the expiration of the preceding two year sentence. The court actually sentenced him to serve eight years. We, therefore, conclude that the trial court properly found defendant to be a second offender within the meaning of the multiple offender statute.
For the reasons assigned, the conviction and sentence are affirmed.
NOTES
[1] Assignments of Error neither briefed nor argued are considered abandoned. Therefore, as defendant neither briefed nor argued assignment of Error No. 4, it is considered abandoned.