SAUNDERS, Judge.
| ,The Defendant, M.L., Jr., appeals his conviction and sentence of indecent behavior with a juvenile. For the following reasons, we affirm his conviction and modify the sentence.
FACTS AND PROCEDURAL HISTORY:
Defendant married the victim’s mother, B.L., in 1998, when the victim was three months old. On a Saturday in October 2006, B.L. and her friend, J.S., went shopping, and the victim stayed home with Defendant. When the two women returned to the Port Barre residence, they were able to see Defendant sitting in his *1185 office with the victim, S.M., in his lap. The front door had clear glass in it.
B.L. and J.S. could see that Defendant and the victim were watching the computer screen, which appeared to depict a naked couple having sex. As B.L. opened the front door, Defendant shoved the victim off his lap, and switched to a video-clip of a game of pool.
B.L. testified she was also concerned because on another occasion, she saw the victim putting two Barbie dolls into a sexual position. She voiced her concerns to J.S., and the two women decided to have one of J.S.’s teenage sons, Robert, talk to the victim. As a result of a conversation with Robert, the victim reported to B.L. that Defendant had touched her “down in her private areas.” B.L. then reported the matter to police.
On February 27, 2007, a St. Landry Parish grand jury indicted Defendant for aggravated incest, a violation of La. R.S. 14:78.1. Prior to trial, Defendant filed a motion to compel the disclosure of a confidential informant’s identity. Said motion was denied after a hearing, and he sought review by this court. On February 6, 2008, this court denied relief in an opinion bearing docket number 07-1476.
|2After other pre-trial activity, the parties selected a trial jury on June 4, 2008. The jury began hearing evidence on August 21, 2008 and concluded the next day. On November 13, 2008, the trial court sentenced Defendant to four years at hard labor, the first two without benefit of parole, probation, or suspension of sentence.
Defendant now appeals his conviction and assigns seven errors. For the following reasons, we affirm the conviction.
ASSIGNMENTS OF ERROR:
1.The evidence introduced at the trial of this case was insufficient to prove the necessary elements of either the greater offense of aggravated incest or the responsive charge of indecent behavior of a juvenile returned in this case.
2. The trial court erred in granting the State’s oral Motion in Limine with regard to the testimony at the hearing on the Motion to Compel the Disclosure of the Confidential Informant and more specifically at the trial concerning any subsequent investigation conducted by Chief Richard or Assistant Chief Jordan.
3. The trial court erred in denying the Motion for the District Attorney of St. Landry Parish to be Issued a Subpoena Under La. C.E. Art. 507 and be Required to Testify.
4. The trial court erred in concluding that S.M. was competent to testify at the trial of this case.
5. The trial court erred in- concluding that the quantity of pornographic material seized from the home was relevant and thus erred in allowing the State to question its expert regarding the quantity, especially in light of a joint stipulation limiting this type of testimony.
6. Trial counsel rendered ineffective assistance when he failed to move for a mistrial and in failing to object to the insufficiency of the charge to the jury.
7. The record contains errors obvious on the record:
a. The trial court erred in failing to personally advise Appellant of the Sex Offender Registration requirements.
b. The minutes of court of the trial incorrectly reflect that the | ¡¡verdict of the jury was unanimous.
c. The minutes of court of the sentencing: 1) incorrectly reflect an or *1186 der issued by the court restricting certain persons from working as an informant, and 2) fail to contain any mention regarding the court’s comments regarding registering as a sex offender.
LAW AND DISCUSSION ON THE MERITS:

Assignment of Error No. 1

In his first assignment of error, Defendant argues the evidence adduced at trial was insufficient to support the conviction. The analysis for such claims is well-settled:
When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, rehearing denied, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979); State ex rel. Graffagnino v. King, 436 So.2d 559 (La.1983); State v. Duncan, 420 So.2d 1105 (La.1982); State v. Moody, 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibility of the witnesses, and therefore, the appellate court should not second guess the credibility determinations of the triers of fact beyond the sufficiency evaluations under the Jackson standard of review. See State ex rel. Graffagnino, 436 So.2d 559 (citing State v. Richardson, 425 So.2d 1228 (La.1983)). In order for this Court to affirm a conviction, however, the record must reflect that the state has satisfied its burden of proving the elements of the crime beyond a reasonable doubt.
State v. Kennerson, 96-1518, p. 5 (La.App. 3 Cir. 5/7/97), 695 So.2d 1367, 1371.
Defendant was convicted of “indecent behavior with a juvenile” pursuant to La. R.S. 14:81, which at the time of the offense stated, in pertinent part:
A. Indecent behavior with juveniles is the commission of any of the following acts with the intention of arousing or gratifying the sexual desires of either person:
(1) Any lewd or -lascivious act upon the person or in the presence of any child under the age of seventeen, where hthere is an age difference of greater than two years between the two persons. Lack of knowledge of the child’s age shall not be a defense; or
(2) The transmission of an electronic textual communication or an electronic visual communication depicting lewd or lascivious conduct, text, or images to any person reasonably believed to be under the age of seventeen and reasonably believed to be at least two years younger than the offender. It shall not be a defense that the person who actually receives the transmission is not under the age of seventeen.
[[Image here]]
C. For purposes of this Section, the following words have the following meanings:
(1) “Electronic textual communication” means a textual communication made through the use of a computer on-line service, Internet service, or any other means of electronic communication, including but not limited to a local bulletin board service, Internet chat room, electronic mail, or on-line messaging service.
(2) “Electronic visual communication” means the communication of a *1187 visual image made through the use of a computer on-line service, Internet service, or any other means of electronic communication, including but not limited to a local bulletin board service, Internet chat room, electronic mail, or on-line messaging service.
On appeal, Defendant argues the testimonies of three key witnesses were so riddled with inconsistencies as to be not credible. He also argues that Defendant’s act of viewing images on his home computer with the victim did not satisfy the elements of La. R.S. 14:81.
Having alleged a number of such inconsistencies or ambiguities in his brief, Defendant concludes, “[t]here was insufficient evidence to support the State’s theory that a sexual battery occurred in the bathroom; thus, the jury was correct in rejecting this theory.”
| sit appears that the jury rendered a compromise verdict in this case and did not necessarily reject the State’s theory that Defendant inappropriately touched the victim. He was originally charged with aggravated incest, pursuant to La. R.S. 14:78.1, which states, in pertinent part:
A. Aggravated incest is the engaging in any prohibited act enumerated in Subsection B with a person who is under eighteen years of age and who is known to the offender to be related to the offender as any of the following biological, step, or adoptive relatives: child, grandchild of any degree, brother, sister, half-brother, half-sister, uncle, aunt, nephew, or niece.
B. The following are prohibited acts under this Section:
(1) Sexual intercourse, sexual battery, second degree sexual battery, carnal knowledge of a juvenile, indecent behavior with juveniles, pornography involving juveniles, molestation of a juvenile, crime against nature, cruelty to juveniles, parent enticing a child into prostitution, or any other involvement of a child in sexual activity constituting a crime under the laws of this state.
(2) Any lewd fondling or touching of the person of either the child or the offender, done or submitted to with the intent to arouse or to satisfy the sexual desires of either the child, the offender, or both.
(Emphasis added).
We cited La. R.S. 14:81 earlier, and note that evidence conforming to either paragraph of that statute could have proven indecent behavior with a juvenile, so as to form an element of aggravated incest. La. R.S. 14:78.1(B)(1). Therefore, the jury’s apparent verdict did not necessarily reject the State’s premise that Defendant improperly touched the victim.
This court has previously discussed compromise verdicts. For example, in the context of a defendant charged with second degree murder but convicted of manslaughter, this court explained:
| ^Defendant offered no evidence sufficient to support the mitigating circumstances of sudden passion or heat of blood. Thus, there was insufficient evidence for the jury to return the responsive verdict of attempted manslaughter. However, the verdict of attempted manslaughter may have reflected the jury’s right to compromise between the verdicts of guilty of attempted second degree murder and not guilty. In State ex rel. Elaire v. Blackburn, 424 So.2d 246 (La.1982), cert. denied, 461 U.S. 959, 108 S.Ct. 2432, 77 L.Ed.2d 1318 (1983), the court held that compromise verdicts are permissible, so long as the evidence supports either the verdict given or the original charge.
*1188 There was sufficient evidence for the trier of fact to have found that the State proved beyond a reasonable doubt all the elements necessary to support the charge of attempted second degree murder; therefore, a responsive verdict of attempted manslaughter was proper.
Defendant’s specific intent may be inferred from the circumstances. State v. Tilley, 99-0569 (La.7/6/00); 767 So.2d 6.
State v. Charles, 00-1611, pp. 4-5 (La.App. 3 Cir. 5/9/01), 787 So.2d 516, 519-20, writ denied, 01-1554 (La.4/19/02), 813 So.2d 420.
Viewing the evidence in the light most favorable to the prosecution, we find that the evidence was sufficient to support both the verdict reached and the charged offense. Pursuant to La. R.S. 14:81(A)(1), the State had to prove that Defendant performed a “lewd and lascivious act” upon the person of the victim. The jurisprudence has defined such an act as follows: “As noted in State v. Rollins, 581 So.2d 379, 382 (La.App. 4 Cir.1991), ‘A lewd or lascivious act is one which tends to excite lust and to deprave the morals with respect to sexual relations and which is obscene, indecent, and related to sexual impurity or incontinence carried on in a wanton manner. State v. Holstead, 354 So.2d 493 (La.1977); State v. Prejean, 216 La. 1072, 45 So.2d 627 (1950).’” State v. Cloud, 06-877, p. 9 (La.App. 3 Cir. 12/13/06), 946 So.2d 265, 272, writ denied, 07-86 (La.9/21/07), 964 So.2d 331.
At trial, the victim testified that Defendant touched her on “the wrong spot.” When asked to clarify, she pointed to her genital region. Although the incident 17occurred in a bathroom, she explained that when she was a small child, her mother would help her bathe, but Defendant did not. Her videotaped interview suggested that Defendant was helping her shampoo at the time of the incident. However, after the tape was played in open court, she reiterated that Defendant was not helping her shampoo when he entered that bathroom and touched her genital area.
The victim’s testimony showed that Defendant touched her genital area when she was naked and that he was not in any way helping her bathe when he did so. The credibility assessment of her testimony, in comparison to her videotaped interview, was within the jury’s purview. The jury could have reasonably inferred that in this situation, Defendant’s actions were taken to gratify himself sexually. This conclusion is reasonable, since the jury had heard testimony that Defendant, a grown man, had touched the minor victim on her genitals while she was naked, and at another time had watched pornography with the little girl sitting on his lap.
We find that while the victim’s testimony and demeanor may have indicated she was having difficulty staying focused on the proceedings, her testimony did not indicate that she was unable to properly perceive the relevant events at- the times they occurred. Thus, her courtroom behavior does not provide a basis for this court to second-guess the jury’s credibility assessment.
We find that Defendant has failed to show a basis for this court to second-guess the jury’s credibility assessment. Accepting said assessment, and otherwise viewing the evidence in the light most favorable to the State, we find that the record would have supported a conviction for the charged offense. The compromise verdict was valid. Thus, the assignment lacks merit.

IsAssignments of Error Nos. 2 & S

Defendant combines these assignments in brief. He complains the trial court improperly limited the testimony of then- *1189 acting Chief Cindy Jordan of the Port Barre Police Department, both for the pretrial hearing on his Motion to Compel the Disclosure of the Confidential Informant, and for trial. Defendant complains the trial court also erred by refusing to issue a subpoena for the district attorney to testify-
Defendant argues that the Port Barre Police Department’s investigation of the case was “botched,” thus subjecting the department to possible civil litigation. He further argues that such potential liability renders the late chiefs statement regarding the confidential informant as one against interest. However, he cites no authority for this argument and does not even attempt to demonstrate that civil liability attached. It is unclear how the existence of such a confidential informant, or the information said informant allegedly obtained, would have subjected the police department to civil liability. Further, the record does not demonstrate that Chief Richard made the statement pursuant to knowledge or apprehension of any such liability. Therefore, we find that this argument lacks merit.
Defendant also argues that since the information was exculpatory, the State had a duty to immediately obtain the tape that allegedly existed, then turn it over to him. He cites no legal authority for the premise that immediate action was required, and our research has found none. The record shows that Defendant’s trial counsel became aware of the alleged informant and tape when the district attorney did, and Chief Jordan was unable to learn the informant’s identity, or to find any materials that supported the information Chief Richard had conveyed at the meeting with the State and Defense. There is no showing that the State withheld or hid exculpatory | information from Defendant. Therefore, this argument lacks merit.

Assignment of Error No. k

In his fourth assignment of error, Defendant argues the victim should not have been allowed to testify; he alleges she was incompetent. Although he now claims that his trial counsel objected on this issue, the State points out that no such objection was lodged. Our review of the record indicates that the State is correct.
The record does not contain an objection regarding the victim’s competence to testify. Thus, this issue was not preserved for review pursuant to the “contemporaneous objection rule” codified by La.Code Crim.P. art. 841. The State notes this court’s language in an earlier case:
In order to preserve an issue for appeal, a party must make a contemporaneous objection. Louisiana Code of Criminal Procedure Article 841(A) provides, in part, that “[a]n irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence.” Louisiana courts have consistently recognized this as the contemporaneous objection rule, noting its dual purposes: “(1) to put the trial judge on notice of the alleged irregularity so that he may cure the problem and (2) to prevent a defendant from gambling for a favorable verdict and then resorting to appeal on errors that might easily have been corrected by objection.” State v. Potter, 591 So.2d 1166, 1169, n. 6 (La.1991), writ denied, 619 So.2d 574 (La.6/18/93) (quoting State v. Thomas, 427 So.2d 428, 432 (La.1982)). See also State v. Bias, 95-541 (La.App. 3 Cir. 1/31/96), 674 So.2d 265; State v. Stracener, 94-998 (La.App. 3 Cir. 3/1/95), 651 So.2d 463, writ denied, 97-0696 (La.11/7/97), 703 So.2d 1261.
State v. Dossman, 06-449, pp. 14-15 (La.App. 3 Cir. 9/27/06), 940 So.2d 876, 885, *1190 writ denied, 06-2683 (La.6/1/07), 957 So.2d 174.
In the absence of a contemporaneous objection, this assignment was not preserved for review. This assignment of error lacks merit.

Assignment of Error No. 5

In this assignment of error, Defendant argues that the trial court erred in finding 11ftthat the amount of pornography-found in his home was an admissible fact in the present case. He refers to a stipulation the parties made at a hearing on June 18, 2008, and the State quotes it:
MR. ROY RICHARD: We hereby stipulate to the following: “The State and any and all witnesses called on behalf of the State of Louisiana will refrain from any mention of quantity and/or title of legal pornographic tapes, DVDs and/or images from computers found on the premises of [M.][L.] at the execution of the search warrants in this matter, unless the Court determines it becomes relevant. The State does not agree that every image is legal, but will not refer to them as legal or illegal during this trial on the merits.”
THE COURT: Is that correct with the State?
MR. DONALD RICHARD: That is the State’s stipulation, Judge.
Subsequently, the court made a finding regarding relevance, during the State’s redirect examination of computer expert Thomas Fergerson. The court determined that questions regarding the volume of pornography on Defendant’s computer, relative to whether the volume could affect the likelihood of the pornography being fabricated, were relevant and, thus, did not violate the earlier stipulation. This finding was based on earlier arguments made by the Defendant, where it was suggested that the pornographic images found on Defendant’s computer could possibly have been added to the computer in an effort to frame Defendant. The court found that this argument opened the door for the State to address the volume of that pornography. We agree.
We find that the quantity of pornography found in Defendant’s residence was relevant to the issue discussed — whether fabrication was likely. Based on quantity, the witness was able to testify that fabrication was unlikely. The State brought up the fabrication issue, in an attempt to negate it, during its direct examination of | T1Fergerson. The general matter of Defendant’s possession of pornography was relevant to the case, since the State alleged he had watched pornography with the victim on his lap. Accordingly, we find no merit in this assignment of error.

Assignment of Error No. 6

In his sixth assignment of error, Defendant argues that his trial counsel was ineffective for failing to move for a mistrial when the court allowed the victim to sing a song in court, after her testimony. He also argues that counsel was ineffective for failing to object to the court’s renewed charge to the jury, when it had difficulty reaching a verdict. Finally, he argues trial counsel was ineffective for failing to object to the initial jury instruction, which he contends did not fully inform the jury regarding its ability to assess credibility.
This court has previously explained the analysis for ineffective assistance of counsel claims:
In State v. Griffin, 02-1703, pp. 8-10 (La.App. 4 Cir. 1/15/03), 838 So.2d 34, 40, our brethren of the Fourth Circuit, with whom we agree, reviewed the law applicable to claims of ineffective assistance of counsel stating as follows:
Generally, the issue of ineffective assistance of counsel is a matter more properly addressed in an application *1191 for post conviction relief, filed in the trial court where a full evidentiary hearing can be conducted. State v. Prudholm, 446 So.2d 729 (La.1984); State v. Johnson, 557 So.2d 1030 (La.App. 4 Cir.1990); State v. Reed, 483 So.2d 1278 (La.App. 4 Cir.1986). Only if the record discloses sufficient evidence to rule on the merits of the claim do the interests of judicial economy justify consideration of the issues on appeal. State v. Seiss, 428 So.2d 444 (La.1983); State v. Ratcliff, 416 So.2d 528 (La.1982); State v. Garland, 482 So.2d 133 (La.App. 4 Cir.1986); State v. Landry, 499 So.2d 1320 (La.App. 4 Cir.1986).
The defendant’s claim of ineffective assistance of counsel is to be assessed by the two part test of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); State v. Fuller, 454 So.2d 119 (La.1984). The defendant must show that counsel’s performance was deficient and that he was prejudiced by the deficiency. Counsel’s performance is ineffective when it can be shown that he made errors so serious that counsel was not functioning as the “counsel” guaranteed to the defendant by the Sixth Amendment. Strickland, supra, 466 U.S. at 686, 104 S.Ct. at 2064. Counsel’s deficient performance will have prejudiced the defendant if he shows that the errors were so serious as to deprive him of a fair trial. To carry his burden, the defendant “must show that there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.” Strickland, supra, 466 U.S. at 693, 104 S.Ct. at 2068. The defendant must make both showings to prove that counsel was so ineffective as to require reversal. State v. Sparrow, 612 So.2d 191, 199 (La.App. 4 Cir.1992).
This Court has recognized that if an alleged error falls “within the ambit of trial strategy” it does not “establish ineffective assistance of counsel.” State v. Bienemy, 483 So.2d 1105 (La.App. 4 Cir.1986). Moreover, as “opinions may differ on the advisability of a tactic, hindsight is not the proper perspective for judging the competence of counsel’s trial decisions. Neither may an attorney’s level of representation be determined by whether a particular strategy is successful.” State v. Brooks, 505 So.2d 714, 724 (La.1987).
State v. Schexnaider, 03-144, pp. 17-18 (La.App. 3 Cir. 6/4/03) 852 So.2d 450, 462.
When the victim was excused from the witness stand, she asked to sing a song, and the court allowed it. She sang one line, and people applauded. There is no showing that the victim’s singing elicited undue sympathy from the jury. In the context of the ineffective assistance of counsel claim, the State suggests that Defense counsel could well have made a tactical decision not to object. Viewed alongside her other actions while on the stand (e.g., asking for a bite of her sandwich, stating she forgot the proceedings before lunch), trial counsel may have viewed her singing as an indication that she was distracted, or did not understand the proceedings. He may | iswell have hoped the jurors would have the same impression. As there is a reasonable possibility that trial counsel made a strategic decision not to object, this issue should be deferred to the post-conviction relief process.
As for the renewed charge to the jury, we observe that the jury initially retired to deliberate at 6:48 p.m. At 7:53 *1192 p.m., it sent in a request to review the videotape of the victim’s interview at Stul-ler Place, which the court refused. At 8:35 p.m., the jury reported it was having difficulty reaching a decision. The court sent the jury back to deliberations, with a reminder that a valid verdict required at least ten jurors.
At 10:28 p.m., the jury returned to report that it was still having difficulty reaching a verdict. In the course of re-instructing the jury, the court stated:
THE COURT: Still no verdict. All right, ladies and gentlemen, let me read something to you at [this] time. As you know, this is an important case, and all cases are important. If you fail to agree on a verdict, the ease i[s] left open and undecided. Like all cases, it has to be disposed of sooner or later. There does not appear to be any reason to believe that this case can be tried again better, or more exhaustively, than it has been before you today and yesterday. Any future jury must be selected in the same manner and from the same sources as you have been chosen. So there appears no reason to believe that the case would ever be submitted to twelve men or women for that matter more intelligent, more impartial, or more competent to decide it, or that clearer evidence could be produced on behalf of either side.
It is unnecessary to add, members of the jury, that this Court does not wish any juror to surrender his conscientious convictions. As stated in the instructions given at the time the case was submitted to you, do not surrender your honest convictions as to the weight or effect of evidence solely because of the opinion of the other jurors, or for the mere purpose of returning a verdict. However, I wish to repeat that it is your duty, as jurors, to consult with one another and to deliberate with a view to reaching an agreement, if you can do so without violence to your independent judgment. Each of you must decide the case for yourself, but you should do this only after consideration of the evidence with your fellow jurors.
This is a time when a lot of patience is required, when a lot of understanding is required, and please don’t get mad at each other; nobody else is mad at you, so why should you get mad at each other? | uJust be as patient with each other as you possibly can. Remember, that this is a very serious matter. We are going to abide by your decision, whatever it may be. You’ve been deliberating now for approximately three hours. If you cannot decide it, we will all accept that, but we would all be very grateful to you if you could reach a decision in this matter. So what I’m going to do at this time is I’m going to ask that you try once more. I’m also going to send some food to you. Do all of you eat hamburgers, and french fries, and coke? Anybody does not eat that?
(No show of hands.)
THE COURT: Okay, what I’m going to do is I’m going to order food for you and I’m going to send it down, but as I stated, we would certainly appreciate it if you would go down and attempt to render a verdict in this matter. There have been deliberations for much longer periods of time than what you’ve been down there, and I know it’s getting late into the night. It’s ten o’clock, right at ten-thirty, I’m sorry, but I’m going to ask you to go down and give it one last attempt in accordance with the instructions that I’ve just given you. I wish you all would all think about those instructions, think about the instructions that I gave you previously, think about the law and the evidence, and try and *1193 make one more attempt to render a verdict in this matter. Thank you. Please follow the bailiff and we’ll get your food down there in a very short period of time.
(At which time the jury is escorted to the deliberation room to continue deliberations.)
THE COURT: Court is at recess.
(It is now 11:56 p.m. and the jury has notified the Court that it has reached a verdict.)
THE COURT: Let the record reflect that the defendant and his attorney, Mr. Roy Richard, are present, that the State is present through its prosecutors, Mr. Donald Richard and Ms. Jennifer Ar-doin. The jury is all accounted for and seated. Ladies and gentlemen of the jury, have you reached a verdict?
JURY FOREPERSON: Yes, we have, Your Honor.
This court has previously discussed such a jury charge in the context of a Strickland claim:
While most ineffective assistance claims are more properly addressed in the post-conviction relief process, Defendant is correct in asserting that the current record is sufficient to assess the assignment.
11fiThis court has discussed Allen charges as follows:
In [State v.] Nicholson, 315 So.2d 639 [ (La.1975) ], the supreme court set limits to the instructions that a trial judge can give to a jury after the jury announces it cannot reach a verdict. In Nicholson, the court held when a trial court gives a deadlocked jury an instruction that rises to the level of being an “Allen charge” or any “coercive modification” of an Allen charge, the trial court has committed reversible error. The Allen charge originated in Allen v. United States, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896), where the United States Supreme Court approved a charge designed to break a jury deadlock and accomplish jury unanimity. One characteristic of an Allen charge is an admonition to the jurors in the minority to reconsider their opinion in favor of the majority in order to reach a decision. State v. Schamburge, 344 So.2d 997 (La.1977); State v. Washington, 93-2221 (La.App. 1 Cir. 11/10/94); 646 So.2d 448; State v. Caston, 561 So.2d 941 (La.App. 2 Cir.1990); State v. Campbell, 606 So.2d 38 (La.App. 4 Cir.1992). A second characteristic is the trial court implying to the jury that it must reach a decision because the trial court will not accept a mistrial. Id.
The Louisiana Supreme Court has banned the use of Allen charges and “modified” Allen charges to ensure that juror verdicts are not the product of coercion. Schamburge, 344 So.2d 997; Nicholson, 315 So.2d 639. “When the duty to reach a verdict is coupled with the trial court’s admonition that those in the minority should reconsider their position, there exists an almost overwhelming pressure to conform to the majority’s view.” Washington, 646 So.2d at 454-455.
State v. James, 96-472, pp. 3-4 (La.App. 3 Cir. 12/11/96), 687 So.2d 485, 487, writ denied, 97-0069 (La.5/16/97), 693 So.2d 796.
In the present case, the following colloquy is at issue:
THE COURT:
All right, Ladies and Gentlemen, as you are aware there’s been another note that we have received. The question says, “our options?” Is there a hung jury (or mistrial) or not guilty? *1194 Because there’s no space for hung jury. Is it the same? Signed Richard A. Hilton.
Anything from the State? I think if he’s asking — if | )f,I had to read it I think he’s asking indicating that they may be at some type of impasse to be quite candid. But then there’s a question as to is there something on the form that they should fill out if that’s the situation.
[[Image here]]
THE COURT:
Ladies and Gentlemen, I’ve reviewed the note that’s been presented to the Court. At this time I would like to make an additional instruction just as an attempt to see if we can get the matter resolved. I want you — I have this additional instruction for you to consider and to act on. I want you to realize that this is an important case and I am going to send you back into the deliberation room for another 30 minutes. I am going to try and urge you to come to some kind of agreement.
Do not, however, surrender your individual opinions just to reach a verdict. But do consider the other jurors views whether you’re in the minority or in the majority with regard to the issue that you’re considering. Please consider each other’s views and weigh it against your own conclusions. And I am going to ask that you go back for 30 more minutes and attempt to deliberate to see if we can reach an — reach this impasse. All right. If you’ll go back with the Bailiff.
[JURY EXITS COURTROOM]
[[Image here]]
As the State notes in its brief, the scenario in James was similar to the one in the present case. The James court noted:
[T]he jury announced it was not able to reach a verdict after three hours of deliberation. When the trial court asked the jury foreman if he thought the jury would be able to reach a verdict with additional deliberation, the foreman answered, “At this time, no, your Honor.” The trial court then ordered the jury taken out and recessed court for fifteen minutes to research case law concerning instructions a trial judge can give to a jury when the jury announces it cannot reach a 117verdict. After the recess, the trial court gave the following instruction to the jury:
All right. I have this additional instruction for you to consider and act on. This is an important case, and I’m going to return you to deliberate for thirty more minutes and urge you to come to an agreement. Do not, however, surrender your individual opinions just to reach a verdict, but do consider the other juror’s views whether you’re in the minority or in the majority, consider the other’s views and weigh it against your own conclusions, and I’ll have the jury return to further deliberate for thirty minutes.
In giving this instruction, the trial court did not imply to the jurors that it would not accept a mistrial, nor did it attempt to coerce the jury members holding the minority viewpoint to accept the majority position. The trial court’s instruction does not contain the restrictive elements that characterize an Allen charge or a modified version of an Allen charge. It was also within the discretion of the trial court to “urge [the jurors] to come to an agreement.” In [State v.] Governor, 331 So.2d [443] at 453 [(La. *1195 1976) ], the Louisiana Supreme Court stated:
It is safe to state as a settled proposition that when the Court is informed by a jury that they cannot agree, it is not error for the court to impress upon them the importance of the case, urge them to come to an agreement, and send them back for further deliberation ...
(Emphasis added.)
The charge given by the trial court does not rise to the level of an Allen charge or a modified Allen charge, and therefore, the trial court did not abuse its discretion by giving this instruction to the jury. This assignment of error lacks merit.
Id. at 487-88.
| i8The charge at issue in the present case was not an Allen charge. Therefore, Defense counsel’s failure to object to the charge did not constitute deficient performance, pursuant to the first prong of the two-part Strickland test. Defendant fails to show that trial counsel was ineffective regarding the jury charge.
State v. Gauthier, 04-1608, pp. 10-13 (La.App. 3 Cir. 11/2/05), 916 So.2d 314, 321-23. Defendant in the present case cites State v. Dabney, 05-53 (La.App. 5 Cir. 6/28/05), 908 So.2d 60, which included a renewed jury charge that contained some similarities to the present one. However, the charge in Dabney is distinguishable, because it contained a passage that was obviously fatal under Allen and Nicholson:
The trial court also attempted to coerce the jury members who held the minority viewpoint to accept the majority position when it stated, “[i]f there are more people on one side than the other, you can look at that, scratch — it’s okay to scratch your head and say, why are they thinking that way and I’m not thinking that way too.” In Nicholson, supra, the trial court admonished the jurors similarly and the Louisiana Supreme Court found reversible error.
Id. at 67. The present case does not include such an exhortation to minority jurors.
In light of Gauthier, we find that Defendant’s trial counsel was not ineffective for failing to object to the renewed jury charge.
Defendant’s final allegation of ineffective assistance of counsel is that his trial counsel failed to object to a faulty jury instruction. During said instruction, the trial court stated:
The evidence which you should consider consists of the testimony of the witnesses [and of the exhibits such as writings and physical objects] which the court has permitted the parties to introduce.
You must consider only evidence which is admitted during the trial. You may not consider evidence which you were instructed to disregard or to which an objection was sustained.
You are the exclusive judges of the facts. You find from the evidence what facts have been proved and what facts have not been proved. For this purpose you alone determine the credibility of the witnesses, accordingly as you are impressed with his or her veracity.
| lflYou may take into account his or her manner on the stand, the probability or improbability of his (or her) statements, the interest or want of interest he (or she) may have in the case, and every circumstance surrounding the giving of his (or her) testimony, which may aid you in weighing the witness’ statements.
If you believe that any witness in the case, either for the State or for the defense, has wilfully and deliberately *1196 testified falsely to any material fact for the purpose of deceiving you, then I charge you that you are justified in disregarding the entire testimony of such witness as proving nothing and as unworthy of belief. You have the right to accept as true, or reject as false, the testimony of any witness, accordingly as you are impressed with his or her veracity.
The Defendant is permitted by law to testify in his own behalf. The Defendant does not have to testify, and may rely solely on his presumption of innocence. If he does testify, he is governed by the same rules in testing his credibility and the correctness of his statements as every other witness. You have the right to believe or disbelieve him, just as he impresses you as to the truth or falsity of his testimony.
If he does not testify, you may not consider this fact, or permit it to raise a presumption of guilt against him, and you may consider only those facts established to and brought out on the trial of the case, in determining his guilt or innocence.
Defendant notes the settled law regarding a jury’s authority to assess credibility: “A determination of the weight of evidence is a question of fact, resting solely with the trier of fact who may accept or reject, in whole or in part, the testimony of any witnesses.” State v. Macon, 06-481, pp. 7-8 (La.6/1/07), 957 So.2d 1280, 1285.
The State argues that the error was harmless. The record shows, as a practical matter, that the jury applied the correct standard. If it had accepted the victim’s testimony “in whole” then it would have found Defendant guilty as charged.
Also, we note jurisprudence that has approved a similar jury instruction:
In this assignment of error, the defendant complains of the jury charges either given or not given by the trial court. He claims that a charge on credibility erroneously stated the law, that the trial court did not give “not guilty” as a responsive verdict, and that the trial court gave the jury an improper impression as to the importance of the instruction on statements by an accused. As to the charge on credibility, the | gpdefendant complains of the following:
Ladies and Gentlemen, you are the exclusive judges of the facts of the case and you find from the evidence which facts have been proved, and which facts have not been proved. For this purpose you are the sole judges of the credibility of the witnesses and the weight to be given their testimony. You are to give that degree of credence to the testimony of a witness as you are impressed by their veracity. Now in determining the credibility of witnesses, you may take into account their manner on the witness stand, the probability or improbability of their statements, the interest or the lack of interest they may have in the case, and every fact and circumstance surrounding the giving of their testimony which may aid you in weighing their statements. Now if you believe that any witness in the case has wilfully and deliberately testified falsely to a material fact for the purpose of deceiving you, then I charge you that you would be justified in disregarding the entire testimony of such witness as proving nothing and as unworthy of belief. You have the right to accept as true or reject as false the testimony of any witness accordingly as you are impressed with their veracity.
There is no merit to the defendant’s argument that this charge requires the jury to take an all or nothing approach. *1197 The charge given by the trial court is virtually identical to that in State v. Prestridge, 399 So.2d 564 (La.1981). The Supreme Court held that the charge did not require the jury to take an all or nothing approach, but that it merely stated that the jury had the right to do so. The court stated that the charge, when read as a whole, was a fair statement of the jury’s function as the trier of fact and judge of credibility.
State v. Walters, (La.App. 4 Cir.), 582 So.2d 317, 323, writ denied, 584 So.2d 1171 (La.1991).
Defendant fails to meet the second prong of Strickland, as he has not shown that counsel’s failure to object prejudiced his case. For the reasons discussed, this assignment lacks merit.

Assignment of Error No. 7

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed by court for errors patent on the face of the record. After reviewing the record, we find that \nthere is an error patent regarding the sentence imposed. Additionally, the court minutes are in need of correction, which is also raised by Defendant in assignment of error number seven.
The bill alleges that Defendant committed the offense between February 2006 and December 2006. The record indicates that the computer incident occurred in October 2006, but it does not reflect a specific date for the touching incident; only that the touching occurred before the computer incident. An approximate date of the touching is necessary to facilitate a review of the legality of the sentence as the penalty provision for indecent behavior with a juvenile was amended in 2006.
Prior to its amendment in 2006, La. R.S.14-.81 required that offenders be sentenced to not more than seven years with or without hard labor. Effective August 15, 2006, the legislature amended the penalty provision of La. R.S. 14:81 to provide:
H. (1) Whoever commits the crime of indecent behavior with juveniles shall be fined not more than five thousand dollars, or imprisoned with or without hard labor for not more than seven years, or both, provided that the defendant shall not be eligible to have his conviction set aside or his prosecution dismissed in accordance with the provisions of Code of Criminal Procedure Article 893.
(2) Whoever commits the crime of indecent behavior with juveniles on a victim under the age of thirteen when the offender is seventeen years of age or older, shall be punished by imprisonment at hard labor for not less than two nor more than twenty-five years. At least two years of the sentence imposed shall be served without benefit of parole, probation, or suspension of sentence.
2006 La. Acts No. 103, § 3. The Defendant was sentenced under the new penalty provision, La. R.S. 14:81 H(2), to four years at hard labor with the first two years without benefit of parole, probation or suspension of sentence.
A review of the testimony at trial indicates the victim was the only one to reference a time period when the touching occurred. S.M. testified in pertinent part:
ImQ. You don’t ever remember saying, “Dad, I’m ready,” and he would have to come and get the shampoo out of the cabinet and put a little drop on your head so you can ...
A. That’s my mom.
Q. Your mom did that, your dad never did that?
A. No, sir, my dad just, my dad just stayed out of the bathroom.
Q. He would just stay out, okay. Did your dad, this time that you’re talking about, that your dad touched you on *1198 your privates, was your dad helping you to take a bath?
A. Uh, when I was a baby.
Q. When you were a baby and this happened when you were a baby?
A. Yes, sir.
Q. And that’s what your [sic] remember, you were a baby and that’s when it happened?
A. Uhh, when, after I finish taking a bath, uh, I was getting out of the tub, I let the water drain out and when I get out of the tub, [M.L., Jr.] came in and tried, and tried to mess with me.
Q. And did what with you?
A. Tried to mess with me.
Q. Tried to mess with you?
A. Uh-huh.
Q. After you got out of the tub ...
A. Yes.
[[Image here]]
Q. Your dad never helped you with a bath?
A. Uhh, my dad never helped me with my bath. My mom — let me tell you what I did this morning. My mom, she came inside, she went inside my room, she woke me up and she laid down in my bed, and I asked her if I can do my bath water and she said yes, and I did my bath water. I put it on hot, very hot and then when the tub became too full, I turned the l^water off and my mom asked me to get some soap and I did. I got a good soap, the good kind of soap, and I put it on my rag. The suds were all over my hand, and I scrubbed, and I put some more on my rag and then I scrubbed myself, and then uh, I got myself out of the tub and dried off.
Q. So you did the whole bathing by yourself, you’re old enough now to where you can do it all by yourself, but when you were a baby, could you do it all by yourself?
A. Uh-uh, ‘cause I was just little.
The victim’s testimony that the touching occurred when she was a “baby” and “little” does not pinpoint the time of the offense. When put in context, however, it indicates that the incident likely occurred before the effective date of the amendment in October of 2006. Accordingly, Defendant’s sentence will be amended by deleting the provision providing that the sentence is to be served without the benefit of parole, probation, or suspension of sentence. The trial court will note the change in the court minutes.
In assignment of error number seven, Defendant alleges there are several “errors patent.”
Defendant indicates that the court minutes incorrectly state that the jury verdict was unanimous when the transcript indicates the verdict was ten to two. Accordingly, the minutes will be corrected by the trial court to accurately reflect the transcript. Additionally, Defendant states that the minutes of sentencing do not mention the trial court’s oral notice regarding sex offender registration. However, this assertion is incorrect, as the minutes correctly reflect that the trial court advised Defendant of his obligation to register as a sex offender. Finally, Defendant complains that the minutes of sentencing refer to an order by the trial court prohibiting a defendant convicted of a felony or misdemeanor and sentenced to a “supervised suspended sentence” from acting as an informant. This is not reflected in the transcript of | ^sentencing and is surplus-age in the minutes of sentencing which has no effect on the sentence. Thus, no action need be taken.
CONCLUSION:
For the foregoing reasons, Defendant’s conviction is affirmed. However, we find that the sentence is illegally excessive. *1199 Consequently, the sentence is amended by deleting the provision providing that the sentence is to be served without the benefit of parole, probation or suspension of sentence, and we instruct the trial court to note the change in the court minutes. Additionally, we instruct the trial court to correct the minutes to accurately reflect the transcript which provides that the jury verdict was ten to two.
AFFIRMED AND AMENDED.
COOKS, J., dissents and assigns written reasons.